FILED
 2007 Dec-10  PM 01:25
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GEORGE W. JACKSON, III,

    PLAINTIFF,

VS.                                   CASE NO.: CV-07-J-1045-S

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

The plaintiff applied for disability insurance benefits due to "4 heart attacks, swollen joints, hbp" (R. 47, 61).  The plaintiff also alleges that he suffers from back and knee problems (R. 72, 165).  The application, seeking benefits as of July 1, 2004, to the present was denied (R. 14-22).  A hearing in front of an administrative law judge (ALJ) was subsequently held (R. 269-293) and the ALJ thereafter rendered an opinion finding that the plaintiff was not entitled to disability benefits at any time through the date of the decision (R. 14-22).

The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied (R. 4-6), making the ALJ's decision the final order of

the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The plaintiff asserts that the ALJ's residual functional capacity rating findings are not based on substantial evidence and that the Appeals Council erred in failing to remand for resubmitted "new" and material evidence (doc. 10). The ALJ determined that the plaintiff could perform a limited range of sedentary work (R. 22).

The medical records from all sources are as follows:

X-rays of the plaintiff's lumbar spine in 1996 found mild focal discogenic degenerative changes at L3-4 with minimal dextroscoliosis (R. 110). His records reflect a history of headaches and migraines (R. 112, 160, 161). In August 2002 the plaintiff underwent cardiac catheterization and coronary angiography for atypical chest pain, which found minimal coronary artery disease with excellent stent placement (R. 148, 150-151).

He was treated for shoulder pain in May 2004 which was diagnosed as tendonitis/bursitis and degenerative changes were noted upon x-ray (R. 137-143, 203). Follow up records from plaintiff's regular treating physician reflect that the shoulder pain had been a chronic problem which had recently worsened (R. 160). Thereafter, the plaintiff experienced knee pain, which was determined to be likely infectious prepatella bursitis, which resolved (R. 201, 203). Medical records reflect treatment for chest pain in October 2004 for which he was treated with a "green cocktail and nitroglycerin (R. 128-133).

The plaintiff's current primary care physician is Dr. Terry Short, whose September and December 2004 treatment records reflect that the plaintiff did not complain of shortness of breath or trouble sleeping (R. 155, 158). Dr. David Sibley, plaintiff's cardiac physician, noted in July 2005 that the plaintiff did not complain of shortness of breath (R. 213). However, plaintiff's previous treating physician, Dr. Bachman, recorded that the plaintiff complained of shortness of breath with exertion, which was chronic and unchanged (R. 160). Dr. Bachman's records also reflect that the plaintiff was receiving Zoloft for anxiety and headaches, but reported it did not help (R. 161).

A February 2005 MRI concluded that the plaintiff had a small left knee effusion with no evidence of ligamentous or meniscal injury (R. 195). Dr. Keith Weaver concluded that the plaintiff's knee pain was likely due to mild arthritis (R. 197). A September 2005 medical record reflects a history of low back pain following a motor vehicle accident several years earlier (R. 206). Dr. Weaver's records also show that the plaintiff reported low back pain which had been worse for a few weeks, which Dr. Weaver described as "chronic/intermittent" and that the plaintiff had trouble with it "off and on" (R. 216). Back x-rays showed some degenerative changes with narrowing at L4-5 (R. 216). An MRI of plaintiff's lumbar spine in October 2005 found "multilevel degenerative changes with broad-based disc bulge and facet degenerative changes " (R. 218).

The plaintiff was sent to Dr. John Lisiak for a consultative examination (R. 165). Dr. Lisiak noted that the plaintiff complained of pain in his back, knees and joints, as well as panic attacks, and further noted that he was provided with only one prior medical record from two months prior (R. 165). The plaintiff reported that strenuous activities caused chest pain, but that he rarely had such pains when seated (R. 166). Dr. Lisiak noted the plaintiff exhibited no pain in knee raising, no pain upon palpitation of the lumbar spine, and never appeared short of breath during the examination (R. 167-170). Dr. Lisiak did recognize that the plaintiff had a history of coronary artery disease with a coronary artery graft in 1990 and two stents, and that the plaintiff complained of occasional chest pain (R. 169). Dr. Lisiak did not disbelieve plaintiff's complaints of chronic knee and back pain, but rather noted he had been provided no x-rays or medical records in support of these complaints (R. 169). Dr. Lisiak concluded that the plaintiff would have no limitations in manual dexterity, be limited to lifting and carrying no more then 10 to 25 pounds, have no limitations in crouching, stooping or bending, and have no limitation in his ability to sit, stand or walk for four to six hours in an eight hour day (R. 170).

The plaintiff was also sent for a consultative examination shortly after his hearing in front of the ALJ to Dr. James Blake (R. 221). Dr. Blake noted that the plaintiff heel to toe walked and squatted with assistance and had degenerative joint disease in his shoulder and cervical spine (R. 222). He opined that the plaintiff

4

suffered from depression, fatigue and weakness due to lack of sleep secondary to medications, that he was at risk for falls and injury, suffered from chronic neck and back pain, had uncontrolled hypertension and was unable to work around hazardous fumes (R. 223). In Dr. Blake's opinion, the plaintiff could lift no more than 10 pounds frequently, sit no more than two hours in an eight hour work day and stand and walk combined no more than two hours in an eight hour work day (R. 224). Dr. Blake further found the plaintiff to have numerous limitations on his ability to manipulate objects and further limited by levels of pain[1] (R. 225).

The plaintiff resubmitted the February 2005 MRI of his left knee and the October 2005 MRI of his lumbar spine to the Appeals Council (R. 233, 235). He further submitted records post-dating his hearing but pre-dating the ALJ's decision, which included a December 2005 hospital visit for a cough, sore throat and body aches (R. 237-245) and a May 2006 hospital inpatient record for chest pain, shortness of breath and headache for which a cardiac catheterization was performed[2] (R. 246-262). Mild disease with 30% to 40% stenosis was found in various arteries but LV size and function were deemed normal (R. 261-262). Medical records from that

---

[1] Dr. Blake noted that the plaintiff had pain present which did not prevent functioning in everyday activities or work, but also found that physical activity such as walking, standing, etc., would greatly increase this level of pain (R. 225). Such findings seemingly point to a conclusion that the plaintiff could perform sedentary work, based solely on his level of pain.

[2] These records were submitted to the ALJ after the hearing but prior to her decision. *See* plaintiff's memorandum at 6-7. However, these records were not made part of the record and therefore resubmitted to the Appeals Council.

admission reflect that the plaintiff reported he was "doing fairly well until 2 days ago when he had recurrent angina... SOB weakness dizziness and [increased] BP" (R. 267).

At the time of the hearing, in October 2005, the plaintiff was 59 years old, having been born August 22, 1946 (R. 280). He attended college, but did not graduate due to being drafted during the Vietnam War (R. 281). He testified that he was unable to work due to chest pain upon physical activity (R. 275); back pain exacerbated by standing (R. 276), and knee pain (R. 277). The plaintiff asserted he could stand for 10 to 15 minutes, sit about 30 to 45 minutes if he squirms constantly, and walk no more than one block before he would be short of breath (R. 277-278). The plaintiff testified that he spent most of the day in bed watching TV (R. 278-279). He is able to care for himself but does no housework because his fiancé "wants to do it ....[s]o, I don't complain." (R. 279). The plaintiff also testified his medication made him sleepy (R. 280).

The plaintiff retired as a state trooper and then worked as a field supervisor for two separate security companies (R. 272-274). The vocational expert (VE) testified work as a state trooper is a medium, skilled occupation as is a security service supervisor (R. 283). Both of these jobs would provide transferrable skills to work at the light and sedentary levels which exist in large numbers in the national economy (R. 283, 285-286). The VE testified that, assuming an individual limited to no more

than sedentary work with no climbing of ropes, ladders or scaffolding, no temperature extremes or humidity and no work at unprotected heights, with the transferrable skills of the plaintiff, there were still jobs in significant numbers in the national economy (R. 286-287). However, if the plaintiff's complaints of fatigue and pain were found credible, there would be no jobs he could perform (R. 288).

## Standard of Review

The initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct.

206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). The findings and decision of the Commissioner are conclusive if supported by substantial evidence. However, no presumption of validity applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect

they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990).

## Legal Analysis

The ALJ found that the plaintiff suffered from the severe impairments of coronary artery disease, status post coronary artery bypass grafting and PTCA with stenting, and degenerative disease of the lumbar spine, none of which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 16-18). She specifically found the plaintiff did not meet the criteria for Listing 4.04C or Listing 1.04 (R. 18). The ALJ also detailed why she did not find the plaintiff's claims of shoulder and knee impairments, hypertension and anxiety to be "severe" impairments (R. 17-18). The ALJ's carefully detailed opinion demonstrates that she considered the MRI results from February and October 2005 (R. 19).

Additionally, the ALJ carefully detailed the reasons she gave no weight to the findings of Dr. Blake (R. 20). The court finds that the ALJ was correct that the limitations he ascribed to the plaintiff were not supported by his own examination or the remainder of the evidence in the record.

The ALJ considered the plaintiff's complaints of pain, but found them suspect for reasons she then enumerated (R. 19). The ALJ determined that the plaintiff had

a residual functioning capacity to perform a limited range of work at the sedentary level (R. 18, 22).

The plaintiff argues that the ALJ's residual functional capacity findings are not based on substantial evidence and that the Appeals Council erred in failing to remand for resubmitted "new" and material evidence. Plaintiff's memorandum (doc. 10). The Appeals Council must consider new evidence if it is material and relates to the period on or before the date of the ALJ's decision. *See e.g., Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) and *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986). The plaintiff must also establish that good cause exists for the failure to submit the evidence to the ALJ. *See Cannon,* 858 F.2d at 1546.

The court finds that the plaintiff is excused from not submitted the evidence of the December 2005 and May 2006 hospital records as plaintiff has provided evidence that these records were sent to ALJ, but not associated with the plaintiff's file. The evidence relates to a period of time prior to the ALJ's decision. Further, the court finds the evidence to be material, as it supports the plaintiff's allegations of recurrent chest pain, shortness of breath and headaches. However, this evidence was not noted, considered or otherwise addressed by the Appeals Council.

> The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007) (citations omitted).  Nothing before this court suggests that the evidence of the May 2006 hospitalization was considered by the ALJ or the Appeals Council.  As to the plaintiff's argument that this case should be remanded for consideration of this evidence, the Commissioner cryptically states:

> On May 12, 2006, Plaintiff reported he had been doing well until a couple of days earlier when he developed chest pain, back pain, shortness of breath, and a headache (Tr. 249).  A cardiac catheterization found Plaintiff had arterial stenosis and decreased left ventricular function (Tr. 261-262).  However, there was no evidence this condition had manifested prior to August 26, 2006, the date of the hearing decision.

Defendant's memorandum, at 10.  The court takes judicial notice of the fact that May 12, 2006, must precede August 26, 2006, and thus is drawn to the conclusion that a condition diagnosed in May 2006 had to have manifested itself prior to August 2006.  The court is of the opinion that had the medical records in question been considered, such consideration could change the decision of the Appeals Council.  Thus, the court is of the opinion that this case must be remanded for appropriate consideration of the May 2006 hospitalization.  *See e.g, Ingram*, 496 F.3d at 1268; citing *Bowen v. Heckler*, 748 F.2d at 636.

Because the court is of the opinion that this case is due to be remanded to the Commissioner, the court does not consider the further arguments of the plaintiff.

## Conclusion

Having considered the foregoing, and being of the opinion that this case is due to be remanded to the Commissioner for consideration of evidence submitted to the ALJ but not made part of the record, and resubmitted as "new" evidence to the Appeals Council and never considered by them;

It is therefore **ORDERED** by the court that this case is **REVERSED** and **REMANDED** to the Commissioner for the reasons set forth herein.

**DONE** and **ORDERED** the 10th day of December, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE